# IN THE U.S. DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | § § § § § § § § § § § | |
| Plaintiff, | | |
| vs. | | No. _____ |
| CROWN LABORATORIES, INC., | | |
| Defendant. | | |

## COMPLAINT

Comes the Plaintiff and would respectfully show the Court as follows:

1. This is a diversity action filed pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 and the lawsuit involves citizens of different states.

2. Plaintiff, The Cincinnati Insurance Company (Cincinnati), is an Ohio corporation whose chief place of business is located at 6200 South Gilmore Road, Fairfield, Ohio 45014-5141.

3. Defendant, Crown Laboratories, Inc. (Crown), is located at 349 Lafe Cox Drive, Johnson City, Tennessee, 37604. Crown's registered agent for service of process is Jeffery A. Bedard, 2301 Buffalo Road, Johnson City, Tennessee 37604.

4. Crown Laboratories, Inc. is one of the named insureds on insurance policy CPP 088 69 96, issued by The Cincinnati Insurance Company on June 19, 2006. The coverage forms related to this lawsuit are Cincinnati's Comprehensive General Liability form GA 101 12 04 and an Umbrella using form US 101 UM 12 04. Both are incorporated into the certified copy of the policy which is attached hereto and filed as Exhibit A to this Complaint.

5. On September 21, 2007 Stiefel Laboratories, Inc. sued Prasco, LLC and Crown in the United States District Court for the Southern District of Ohio, Western Division. A photocopy of the complaint is attached hereto and filed as Exhibit B.

6. Crown has demanded that Cincinnati defend it in the Stiefel lawsuit. Cincinnati believes Crown's policies do not afford coverage for the Stiefel complaint. Cincinnati has denied coverage. Crown has disputed Cincinnati's conclusions, and Cincinnati has therefore filed this lawsuit seeking a declaration as to the parties' respective rights and responsibilities.

7. Stiefel's complaint states that it markets two products collectively known as "BREVOXYL", which are prescription medications used to treat acne. According to the complaint, Prasco, LLC also markets, promotes, advertises and/or sells two competing products collectively known as "Lavoclen." Supposedly, Prasco claims that Lavoclen is a generic substitute for, and therapeutically equivalent to BREVOXYL, although Prasco is well aware that the products contain different ingredients. The complaint states that Crown actually manufactures Lavoclen for Prasco. According to Stiefel, "Crown is well aware that Prasco is marketing Lavoclen as a generic to and substitute for BREVOXYL."

8. The complaint alleges that Stiefel "has been and will be harmed by Prasco's literally and impliedly false and misleading advertising and unfair competition."

9. Count 1 of the Stiefel complaint is a false advertising claim under § 43(a) of the Lanham Act. Most of the count is devoted to allegations against Prasco. However, paragraph 33 states:

> Crown is liable for false advertising under the Lanham Act because it intentionally induced and/or knew or had reason to know of Prasco's false and misleading advertising of Lavoclen...

2

10. Paragraph 35, also included in Count 1, states that the defendants' acts "are willful, wanton, and calculated to deceive, and are undertaken in bad faith..."

11. Count 2 relies on unfair competition, another violation of the Lanham Act. Once again, the complaint states that Crown is liable for unfair competition "because it intentionally induced and/or knew or had reason to know of Prasco's false and misleading advertising of Lavoclen as a generic to and substitute for BREVOXLY to drug databases, wholesalers, distributors, drug store chains, and others, but continued to supply Lavoclen to those entities." As with count 1, plaintiff states "Defendants' acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith..."

12. Count 3 relies on a violation of the Ohio Deceptive Trade Practices Act arising from defendants "false and misleading representations of fact and conduct concerning Lavoclen..." Count 3 states that the defendants had willfully engaged in their actions regarding Lavoclen, respectively, knowing them to be deceptive.

13. Count 4 is based on common law unfair competition. Paragraphs 55 and 56 of that count state in pertinent part:

> 55. Prasco's selective and misleading comparisons of Lavoclen with BREVOXYL deception about the nature, characteristics, and qualities of its knock-off product in comparison, connection, or association with BREVOXYL.
>
> 56. Prasco knows, or in the exercise of reasonable discretion should know, that its marketing program encourages the sale and substitution of its inferior knock-off creamy wash products...

14. Paragraph 58 states that Crown "is liable for unfair competition because it

3

intentionally induced and/or knew or had reason to know of Prasco's false and misleading advertising of Lavoclen as a generic to and substitute for BREVOXYL..."

15. Stiefel seeks both injunctive relief and monetary damages.

16. Under proper circumstances the CGL provides coverage for injuries arising from "bodily injury," "property damage," and "personal and advertising injury." Stiefel makes no claims for "bodily injury." The policy definition of "property damage" requires physical injury to or loss of use of tangible property. Thus, there is no allegation of "property damage" as that term is defined in the policy.

17. The definition of "personal and advertising injury" is found on page 19 of form GA 101 12 04. Of relevance to this lawsuit, the term is defined as "injury... arising out of one or more of the following offenses:

\*\*\*

(f) The use of another's advertising idea in **your** 'advertisement'; or

(g) Infringing upon another's copyright, trade dress or slogan in **your** advertisement".

(emphasis added)

18. Every reference to advertising in the Stiefel complaint concerns advertisements run by Prasco. The complaint does not contain a single suggestion that Crown advertised Lavoclen.

19. Because "personal and advertising injury" requires an injury arising from the insured's own advertisement, there is no allegation of advertising injury. Thus, Stiefel's claims do not fall within any of the types of injury which could be covered by the CGL, and there is no possibility of coverage.

4

20. Under proper circumstances, the Umbrella (form US 101 UM 12 04) provides coverage for "bodily injury", "personal and advertising injury" and "property damage" as those terms are defined in the policy.

21. For the reasons discussed in connection in the CGL, there are no allegations of "bodily injury" or "property damage" as those terms are defined in the policy.

22. The policy definition of "personal and advertising injury" encompasses nine types of offenses. Only two could possibly apply to this case. They state that "personal and advertising injury" arises out of:

(g) The use of another's advertising idea in your 'advertisement';

(h) Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'...

23. Stiefel's allegations against Crown do not qualify as "personal and advertising injuries" because there are no allegations that Crown ever advertised Lavoclen. The complaint simply claims that Crown is liable for injuries arising out of Prasco's advertisement of the product.

24. Consequently, the claims made by Stiefel do not satisfy any of the types of injuries which might be afforded coverage under the Umbrella.

25. Even if Stiefel's claims did satisfy the definitions of either of the policies, the policy exclusions would still preclude coverage.

26. Despite Stiefel's use of the wording that Crown "knew and/or had reason to know" of Prasco's wrongdoing, the complaint clearly alleges that Crown knew of and condoned Prasco's intentional wrongdoing. For instance, paragraph 35, which is incorporated into count 1 states that "Defendants' acts are willful, wanton and calculated to deceive and are undertaken in bad faith..."

5

The same statement is made in paragraph 44, which is incorporated into count 2.

27.     In count 3, which alleges violation of the Ohio Deceptive Trade Practices Act, plaintiff states "Defendants have willfully engaged in their actions regarding Lavoclen, respectively, knowing them to be deceptive."

28.     In order to satisfy the definition of "personal and advertising injury" the Court would have to find that the advertisements in question were Crown's. Plaintiff believes the Court will agree that the definition cannot be satisfied. However, should the Court find that the definition of "personal advertising injury" has been met, then the CGL's exclusions for "Knowing Violation of Rights of Another" and "Material Published With Knowledge of Falsity", both set forth in the CGL's Coverage B have been triggered.

29.     The CGL's Exclusion (a) Knowing Violation of Rights of Another states that there is no coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

30.     The CGL's Exclusion (b) Material Published With Knowledge of Falsity states that there is no coverage for "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity. Stiefel argues that the advertisements contain false information which both Prasco and Crown know to be false.

31.     Stiefel also argues that in its advertisements and marketing program Prasco falsely represents that Lavoclen is a generic substitute for, and therapeutically equivalent to BREVOXYL. This allegation triggers Exclusion G Quality or Performance of Goods - Failure to Conform to Statements, which states that there is no coverage for:

6

'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'.

32. In the event the Court finds that the definition of "personal and advertising injury" has been satisfied as to Crown, then the same allegations would trigger Exclusions 2(b) and (d) of the Umbrella. These exclusions state that there is no coverage for "personal and advertising injury":

(b) arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement';

\*\*\*

(d) caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.

33. These allegations would also trigger the provisions of Exclusion 14(a) which removes coverage for "personal and advertising injury" "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity ..."

34. Under these circumstances, there is no possibility that Crown would be entitled to a defense from Cincinnati for the claims made by Stiefel.

Accordingly, Cincinnati prays that the Court determine the rights of the parties and render a declaratory judgment stating that Cincinnati's policy number CPP 088 69 96 affords no coverage whatsoever to Crown Laboratories, Inc. for the lawsuit filed against it by Stiefel Laboratories, Inc. in the United States District Court for the Southern District of Ohio, and for all other and further general relief to which Cincinnati may be entitled.

7

Respectfully submitted this 15th day of August, 2008.

                        s/ John M. Neal
                        John M. Neal, #5920
                        THE NEAL LAW FIRM
                        Post Office Box 51930
                        Knoxville, Tennessee 37950
                        865-684-4600 Telephone/Facsimile
                        Attorney for Plaintiff The Cincinnati Insurance Company