UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| THE CINCINNATI INSURANCE CO., ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | No. 2:08-CV-240 |
| ) | (GREER/SHIRLEY) |
| V. ) | |
| ) | |
| CROWN LABORATORIES, INC., ) | |
| ) | |
| Defendant/Counter Claimant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 81] referring Crown Laboratories, Inc.'s Motion to Compel Complete Answers to Interrogatories and Complete Responses to Request to Produce [Doc. 52] to this Court for report and recommendation.

On April 20, 2011, the Court held a hearing to address the Motion to Compel. Attorneys John Neal and David Benner were present representing the Plaintiff/Counter Defendant Cincinnati Insurance Company, ("Cincinnati"). Attorneys G.P. Gaby and Thomas J. Garland, Jr., were present representing the Defendant/Counter Claimant Crown Laboratories, Inc., ("Crown").

The Court has considered the Motion to Compel and all the parties' filings addressing the issues raised therein, and the Court finds that the Motion to Compel is now ripe for adjudication. For the reasons stated below, the Court **RECOMMENDS** that the Motion to Compel be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Crown is a named insured on insurance policy CPP 088 69 96, issued by Cincinnati Insurance Company on June 19, 2006, which includes commercial general liability coverage. [Doc. 1-1 at 3].

On September 21, 2007, Stiefel Laboratories, Inc., ("Stiefel"), sued Prasco, LLC, ("Prasco"), and Crown in the United States District Court for the Southern District of Ohio, Western Division. [Doc. 1 at ¶ 5]. Stiefel alleged that Prasco and Crown violated the Lanham Act by falsely advertising their products Lavoclen-4 Creamy Wash and Lavoclen-8 Creamy Wash and by unfairly competing with its products Brevoxyl-4 Creamy Wash and Brevoxyl-8 Creamy Wash. [Doc. 1 at ¶ 7-11]. Stiefel also alleged a common law unfair competition claim pursuant to Ohio law and violations of the Ohio Deceptive Trace Practices Act. [Doc. 1 at 12].

Cincinnati brought the instant action seeking a declaratory judgment stating that Cincinnati's policy afforded no coverage to Crown for the lawsuit filed against Crown by Stiefel, in the Southern District of Ohio. [Doc. 1 at ¶ 35].

Crown filed an Answer and Counterclaim, in which it avers that Cincinnati's refusal to promptly provide a defense was not in good faith and violated Tennessee Code Annotated § 56-7-015. [Doc. 6 at ¶ (d)]. Crown also contends that Cincinnati's conduct in denying the claim constitutes unfair and deceptive acts and practices which violate the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101. [Doc. 6 at ¶ (e)].

On March 30, 2010, the District Judge granted in part and denied in part Crown's motion to dismiss. The District Judge concluded that the Cincinnati policy provided coverage for the facts alleged in the complaint filed in Ohio, and that therefore, Cincinnati has a duty to defend the suit.

[Doc. 39 at 6]. The only claims remaining in this matter are those made in Crown's Counterclaim [Doc. 6].

Now before the Court is Crown's Motion to Compel Complete Answers to Interrogatories and Complete Responses to Request to Produce [Doc. 52], which the Court finds to be ripe for adjudication. The Court has heard the parties' positions on this motion at oral arguments, and the Court has reviewed the documents that are at issue *in camera*.

For the reasons stated below, the Court will **RECOMMEND** that the Motion to Compel [Doc. 52] be **GRANTED IN PART** and **DENIED IN PART**.

## II.   POSITIONS OF THE PARTIES

Crown states that it is seeking information relating to Cincinnati's decision-making process, in order to pursue its claims of bad faith and consumer protection violations. Crown is especially interested in documents that would explain why Cincinnati did not address the provision of the policy that Crown argued and the Court found provided coverage. Crown maintains that Cincinnati cannot "hide behind" the work-product doctrine or the attorney-client privilege and refuse to produce this discovery. [Doc. 54 at 1].

Cincinnati responds with a number of arguments in opposition to Crown's request for production. First, Cincinnati claims that these documents do not fall within the scope of discoverable material outlined in Rule 26, because "Cincinnati believes there are no circumstances under which Crown would be entitled to either the bad faith penalty or the treble damages provided by the Tennessee Consumer Protection Act." [Doc. 55 at 7]. Cincinnati maintains that there are no grounds for disclosing communications it made to its attorney under Tennessee law [Doc. 55 at 15],

and Cincinnati contends that "many of the communications on [its] privilege log were indisputably prepared in anticipation of litigation." [Doc. 55 at 1].

III.   ANALYSIS

Initially, the Court finds that Cincinnati's position that the information sought is not relevant, which it bases upon its belief that Crown will not succeed on its bad faith claim, is not well-taken. Thus, the Court turns to Cincinnati's claim of protection from disclosure based upon attorney-client privilege and/or the work-product doctrine. The Court will briefly review each of these standards and, thereafter, apply them to the documents at issue.

A.   **Attorney-Client Privilege**

This case comes before the Court pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000.00 and the suit involves parties that are citizens of different states. Because this matter is before the Court based upon diversity of citizenship, state law supplies the rule of decision, any claim of privilege "shall be determined in accordance with State law." Fed. R. Evid. 501.

Tennessee's attorney-client privilege is stated as follows:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

Tenn. Code Ann. § 23-3-105. This statute embodies the original purpose behind the privilege as it existed at common law. Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc., 190 F.R.D. 463, 468 (W.D. Tenn.1999). Its purpose "is to encourage full and frank communication between

attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

The privilege, however, does not cover all communications between a client and his or her attorney. Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002). For the privilege to apply,

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Humphreys, Hutcheson & Moseley v. Donovan, 568 F. Supp. 161, 175 (M.D. Tenn. 1983) (construing Tenn. Code Ann. § 23-3-105). "The privilege applies not only to the client's communications but also to the attorney's communications to his or her client when the attorney's communications are specifically based on the client's confidential communications or when disclosing the attorney's communications would, directly or indirectly, reveal the substance of the client's confidential communications." Boyd, 88 S.W.3d at 213.

**B.      Work-Product Doctrine**

"The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." In re Professionals Direct Ins. Co., 578 F.3d 432, 438 (6th Cir 2009) (citing Hickman v. Taylor, 329 U.S. 495, 510-14 (1947)).

5

"In a diversity case, the court applies federal law to resolve work product claims . . . . " <u>In re Powerhouse Licensing, LLC</u>, 441 F.3d 467, 472 (6th Cir. 2006). Thus, Rule 26 of the Federal Rules of Civil Procedure governs the court's decision on this issue. Rule 26(b)(3) protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative."

"The lone issue is whether the disputed documents were prepared in anticipation of litigation." <u>Professionals Direct</u>, 578 F.3d at 438. To determine whether a document has been prepared "in anticipation of litigation," the court must ask: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." <u>Id.</u> at 439 (citing <u>United States v. Roxworthy</u>, 457 F.3d 590, 594 (6th Cir. 2006)). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." <u>Id.</u> at 439 (quoting <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.</u>, 967 F.2d 980, 984 (4th Cir.1992)) (internal citations omitted).

Much of the parties' oral arguments addressed <u>In re Professsionals Direct Insurance Company</u>, 578 F.3d 432 (6th Cir. 2009), wherein a malpractice insurer petitioned the Court of Appeals for the Sixth Circuit for a writ of mandamus to vacate a district court order compelling production of allegedly privileged documents in a insured's suit against its insurer. The Court of Appeals upheld the district court's decision noting that the fact that the insurer reasonably anticipated litigation at a certain point did not answer the question of whether the documents at issue were

6

prepared "because of" litigation or not. Id. at 439. The court explained, "Making coverage decisions is part of the ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine." Id.

**C.     Application to the Documents**

Cincinnati has submitted forty-nine (49) documents for the Court's review *in camera*. The Court has reviewed these documents, and the Court finds as follows.

*1.     Work-Product Doctrine*

In regards to protection under the work-product doctrine, Cincinnati agrees that no documents composed prior to July 2, 2008, are entitled to protection under the work-product doctrine. Thus, Cincinnati does not claim work-product protection for Documents 1-22, which were composed on or between June 12, 2008, and June 27, 2008. Further, Crown agrees that documents composed after August 13, 2008, are entitled to protection under the work-product doctrine. Therefore, the parties are in agreement that Documents 30-49, which were composed on or between September 11, 2008, and August 11, 2010, are exempted from disclosure by the work-product doctrine.

Accordingly, the Court's scope of inquiry in regards to application of the work-product doctrine is limited to whether Documents 23-29, which were composed on or between July 9, 2008, and August 13, 2008, are entitled to protection pursuant to the work-product privilege. After reviewing these documents, the Court finds that Documents 23-29 are not entitled to protection under the work-product doctrine. The Court cannot say that anticipated litigation was "driving force

7

behind the preparation of each requested document," Roxworthy, 457 F.3d at 594, but to the contrary, they appear to have been prepared for an ordinary business purpose.

*2.      Attorney-Client Privilege*

In applying the attorney-client privilege, the Court's scope of inquiry is limited to whether Documents 1-29 are entitled to attorney-client privilege. The Court finds that only one document, Document 14, is entitled to protection based upon attorney-client privilege. The Court notes that the most of Documents 1-29 do not involve communications to or from any attorney. Instead, they are largely claim files and business notes.

The Court finds that only Document 14 constitutes a protected communication between Cincinnati and its attorney. The Court finds that Cincinnati, the asserted holder of the privilege, is a client of Attorney Neal. Attorney Neal is a member of the bar and the communication related to his actions as a lawyer. The Court finds that the communication relates to a fact of which Attorney Neal was informed by Cincinnati, without the presence of strangers, for the purpose of securing an opinion on law. The Court finds the communication was not made for the purpose of committing a crime or tort and the privilege has been waived by the client. Moreover, the Court finds that the communication in Document 14, which was made by Attorney Neal to Cincinnati, was specifically based on the client's confidential communications.

Attorney Neal made a legal recommendation to his client. He was hired to give legal advice and did so. The Court finds this communication is protected from production pursuant to the attorney-client privilege.

Accordingly, the Court finds that Document 14 is the only document amongst Documents 1-29 that is protected from production based upon attorney-client privilege. The Court will

8

recommend that Cincinnati not be required to produce Document 14. The Court will recommend that Cincinnati be ordered to produce all other documents contained in the privilege log submitted at the hearing held April 20, 2011.

IV. **CONCLUSION**

Accordingly, the Court **RECOMMENDS**[1] that the Motion to Compel **[Doc. 52]** be **GRANTED IN PART** and **DENIED IN PART**. The Court finds that Crown's request that Cincinnati be ordered to produce Documents 1-13 and 15-49 is well-taken, and the Court **RECOMMENDS** that it be **GRANTED**. The Court finds that Crown's request that Cincinnati be ordered to produce Document 14 is not well-taken, and the Court **RECOMMENDS** that it be **DENIED**.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).